UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re:                                                  )
                                                        )
KAY LOUISE GARDNER and                                  )   Case No. 12-12485 HRT
MARVIN KENNETH GARDNER, JR.,                            )
                                                        )
                                                        )   Chapter 7
Debtors.                                                )
                                                        )

## ORDER ON OBJECTION TO CLAIMS OF EXEMPTION

This case comes before the Court on John Rudisill and Rudisill, Gardner and Zeman, P.C.'s (collectively, "Rudisill") *Objection to Debtors' Amended Claims of Exemption* (docket #63) (the "Objection").

The Court held a hearing on the Objection on October 22, 2012, and on November 19, 2012. Thereafter, the parties filed written closing statements, and the court took the matter under advisement. The Court has considered the evidence and arguments presented by the parties and is ready to rule.

Rudisill objects to the following exemptions claimed by the Debtors on their bankruptcy schedules:

a. Gardner & Co. General Partnership Account
   a) value of property: $3,053.00
   b) value of claimed exemption: $2,289.75
   c) law providing for exemption: CRS §§ 5-5-105 & 13-54-104

b. Professional Practice Equipment
   a) value of property: $5,132.00
   b) value of claimed exemption: $5,132.00
   c) law providing for exemption: CRS § 13-54-102(1)(i)

c. Retirement Accounts - LPL Financial
   a) value of property: $205,163.00
   b) value of claimed exemption: $205,163.00
   c) law providing for exemption: CRS § 13-54-102(1)(s)

d. Retirement Accounts - LPL Financial
   a) value of property: $151,542.00
   b) value of claimed exemption: $151,542.00
   c) law providing for exemption: CRS § 13-54-102(1)(s)

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

    e.    Optum Health Bank Account - Health Savings Account
        a)    value of property: $2,027.75.
        b)    value of claimed exemption: $2,027.75
        c)    law providing for exemption: CRS § 13-54-102(1)(s)

## I. FACTS

1. The Debtors filed their petition under chapter 7 on February 15, 2012. Rudisill is a judgment creditor of the Debtors.

2. In 2010, Rudisill purchased the Debtors' accounting practice. The Debtors' company, Gardner & Zeman, P.C., received sales proceeds of $364,788.45, and Gardner & Zeman distributed $325,000.00 to the Debtors by depositing that amount to the Debtors' joint brokerage account held by LPL Financial.

3. A dispute arose concerning the Debtors' sale of their accounting practice to Rudisill. The dispute was the subject of an arbitration proceeding held in 2011. An interim award was made on November 23, 2011, and the final arbitration award was made on January 17, 2012. An Order of Judgment in favor of Rudisill was made in the District Court, Boulder County, Colorado, on February 13, 2012, in the amount of $486,487.48. Two days later, this chapter 7 bankruptcy case was filed.

4. In December, 2011, following entry of the interim arbitration award, the Debtors caused their successor entity, Gardner and Co., P.C., to set up new 401(k) accounts for each of them.

5. The following deposits were made to the Debtors' 401(k) accounts during the period following entry of the interim arbitration award and prior to entry of the final judgment and filing of the bankruptcy petition:

Kenneth Gardner's LPL Financial 401(k) Account #****-6477

| Amount of Deposit | Date | Source of Funds |
| --- | --- | --- |
| $28,664.50 | 12/15/2011 | check from LPL Financial joint brokerage account #****-8213 |
| $17,000.00 | 1/5/2012 | check from LPL Financial joint brokerage account #****-8213 |

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

| | | |
|---|---|---|
| $5,500.00 | 1/5/2012 | check from LPL Financial "Ken's Cash Account" #****-8778 |
| $2,400.00 | 2/2/2012 | transfer from LPL Financial "Ken's Cash Account" #****-8778 |
| $2,600.00 | 2/3/2012 | check from Gardner and Co., P.C., High Country Bank account #*****5909 |
| $56,164.50 | **Total** | |

Kay Gardner's LPL Financial 401(k) Account #****-2033

| Amount of Deposit | Date | Source of Funds |
|---|---|---|
| $29,929.43 | 12/15/2011 | check from LPL Financial joint brokerage account #****-8213 |
| $17,000.00 | 1/5/2012 | check from LPL Financial joint brokerage account #****-8213 |
| $5,500.00 | 1/9/2012 | check from LPL Financial "Ken's Cash Account" #****-8778 |
| $5,000.00 | 2/3/2012 | check from High Country Bank personal joint account #*****8505 |
| $57,429.43 | **Total** | |

6. The Gardner and Co., P.C., W-2 reconciliation for 2011 reflects that Gardner and Co. made retirement contributions in the amount of $22,000.00 for each of the Debtors for that year and that Kenneth Gardner received taxable wages of $4,658.00 and Kay Gardner received taxable wages of $9,717.73.

7. 2012 W-2 forms prepared by Gardner and Co., P.C., reflect that Gardner and Co. made retirement contributions in the amount of $22,500.00 for each of the Debtors. The same W-2 forms reflect taxable wages in the amount of $1,347.38 for each of the Debtors.

8. Gardner and Co., P.C., was only in existence through February 1, 2012. On that date, Kay Gardner electronically filed Articles of Dissolution with the Colorado Secretary of State.

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

9. Kenneth Gardner's LPL Financial statement for his 401(k) account #****-6477, for the month of December, 2011, reflects a balance of $0.00 at the beginning of the month and deposits during the month of $28,664.50. The deposits are broken down as a "2011 Employer Contribution" of $6,664.50 and a "2011 Employee Contribution" of $22,000.00.

10. Kay Gardner's LPL Financial statement for her 401(k) account #****-2033, for the month of December, 2011, reflects a balance of $0.00 at the beginning of the month and deposits during the month of $29,929.43. The deposits are broken down as a "2011 Employer Contribution" of $7,929.43 and a "2011 Employee Contribution" of $22,000.00.

11. Kenneth Gardner's LPL Financial statement for his 401(k) account #****-6477, for the month of January, 2012, reflects a balance of $28, 664.58 at the beginning of the month and deposits during the month of $22,500.00. The deposits are denominated as "2012 Employee Contributions."

12. Kay Gardner's LPL Financial statement for her 401(k) account #****-2033, for the month of January, 2012, reflects a balance of $29,929.51 at the beginning of the month and deposits during the month of $22,500.00. The deposits are denominated as "2012 Employee Contributions."

13. Kenneth Gardner's LPL Financial statement for his 401(k) account #****-6477, for the month of February, 2012, reflects a balance of $50,747.63 at the beginning of the month and deposits during the month of $5,000.00. The deposits are denominated as "2012 Employer Contributions."

14. Kay Gardner's LPL Financial statement for her 401(k) account #****-2033, for the month of February, 2012, reflects a balance of $52,010.42 at the beginning of the month and a deposit during the month of $5,000.00. The deposit is denominated as a "2012 Employer Contribution."

## II. DISCUSSION

A. Rudisill Has Standing to Object to the Debtors' Claimed Exemptions

Unless a "party in interest" objects to the exemptions claimed by a debtor "the property claimed as exempt . . . is exempt." 11 U.S.C. § 522(l). *See also In re Scrivner*, 535 F.3d 1258, 1264 (10th Cir. 2008). Debtors argue that Rudisill is not a party in interest entitled to object to their exemption claims.

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

The term, "party in interest" is ubiquitous in the Bankruptcy Code. The term is used to designate who may move the Court for relief or to challenge another's right to relief in various contexts. "[T]he term 'is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993) (quoting *White County Bank v. Leavell (In re Leavell)*, 141 B.R. 393, 399 (Bankr. S.D. Ill. 1992)). Because Rudisill is the holder of a final state court judgment against the Debtors and their company, Rudisill is indisputably a creditor in this bankruptcy proceeding. Subject to the priorities specified in 11 U.S.C. § 507, creditors in a bankruptcy liquidation under chapter 7 share pro rata in the distribution of estate assets. *See generally* 11 U.S.C. § 726. Property that is successfully claimed as exempt under § 522 is not subject to liquidation by the trustee and is not applied toward the satisfaction of creditor claims. 11 U.S.C. 522(c). As a consequence, any creditor of a chapter 7 bankruptcy estate has a pecuniary interest in the exemptions claimed by the debtor.

It is not that general proposition with which the Debtors take issue. Instead, they argue that Rudisill lacks standing to make the argument that the Debtors converted non-exempt assets to exempt assets in order to hinder delay or defraud their creditors. They argue that the substance of such an objection is that funds were fraudulently conveyed into the retirement accounts and, since only the chapter 7 trustee may bring a fraudulent conveyance action under 11 U.S.C. § 548, Rudisill lacks the standing to pursue an objection that relies on the Debtors' fraudulent intent when they transferred funds into the retirement accounts.

The main thrust of Rudisill's argument does not go to the Debtors' fraudulent intent. Instead, Rudisill argues that certain of the funds transferred into the 401(k) accounts cannot be exempted because, as a matter of law – quite apart from the Debtors' intent – those funds could not lawfully be contributed to the 401(k) accounts. This is no different from requiring that a debtor's tools, which he claims as exempt tools of the trade, are genuinely used in a trade or business carried on by the debtor. *See, e.g., In re Sharp*, 490 B.R. 592, 597-601 (Bankr. D. Colo. 2013) (analyzing Colorado tools of the trade exemption statute). Similarly, a debtor is not permitted to claim a homestead exemption with respect to residential real estate in which the debtor does not reside. *See, e.g., In re Meachen*, 217 B.R. 877, 879 (Bankr. D. Colo. 1998). Merely placing funds into a 401(k) account does not settle the question of whether the funds are exempt retirement funds. Rudisill argues that the funds are exempt only to the extent that they were deposited into the account lawfully and in accordance with governing IRS statutes and regulations. Based on Colorado case law, the exemption is actually somewhat broader than that but, without question, Rudisill has a sufficient economic stake in the Debtors' exemption claim to make that argument.

Moreover, the Court finds that a debtor's fraudulent intent with respect to the conversion of non-exempt property into exempt property is a proper ground for any party in interest to object to the allowance of a debtor's claim of exemption. Just because such a claim may have some features in common with a trustee's fraudulent conveyance claim under 11 U.S.C. § 548,

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

does not convert it into a claim that only a trustee can make. The nature of such a claim is whether, under state law, a debtor's fraud destroys his right to claim the exemption. Rudisill, as a party in interest, has standing to argue, under Colorado law, that the Debtors' pre-bankruptcy acts exhibit a fraudulent intent and destroy their rights to the claimed exemptions.

B.  Gardner & Co. General Partnership Account

The Debtors claim that the funds in this account are exempt wages under COLO. REV. STAT. § 13-54-104. But Colorado follows the entity theory of partnership law. Under COLO. REV. STAT. § 7-64-201, "A partnership is an entity distinct from its partners." Thus, funds in the partnership account of the Debtors' accounting business are not property of the bankruptcy estate and are not entitled to be claimed exempt in this bankruptcy case.

C.  Professional Practice Equipment

The Debtors claim the equipment used in their accounting practice as exempt under Colorado's exemption for tools of the trade. The evidence shows that this equipment is property of the Debtors' accounting partnership and is not their personal property. Property belonging to the Debtors separate partnership entity is not property of the Debtors' bankruptcy estate and is not entitled to exemption in their personal bankruptcy case.

D.  Optum Health Bank Account - Health Savings Account

Under 26 U.S.C. § 223(d)(1), funds contained in the Debtors' health savings accounts ("HSA") are funds that are held in trust "exclusively for the purpose of paying the qualified medical expenses of the account beneficiary . . .." Nonetheless, the funds contained in a HSA may be accessed by the account beneficiary under the condition that any such distribution loses its tax-exempt status and must be included in the beneficiary's gross income, 26 U.S.C. § 223(f)(2), and such distributions are subject to a 20 percent tax penalty. 26 U.S.C. § 223(f)(4)(A).

No provision of Colorado exemption law exempts funds held by debtors in HSAs. Debtors have claimed the funds exempt under COLO. REV. STAT. §§ 13-54-102(1)(s) & 13-54-104 but neither section is applicable. The Court cannot stretch the definition of "pension or retirement plan or deferred compensation plan" to embrace the funds held in an HSA. Nor do the funds held in the Debtors' HSAs qualify as earnings under the definition contained in § 13-54-104(1)(b)(I).

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

E. Retirement Accounts - LPL Financial

*1) Claim of Exemption under COLO. REV. STAT. § 13-54-102(1)(s)*

As detailed above, between the dates of December 15, 2011, and February 3, 2012, the Debtors deposited a total of $113, 593.93 into newly established 401(k) retirement accounts. With the exception of $2,600.00, deposited to Mr. Gardner's account on February 3, 2012, from a Gardner and Co, P.C., business account, all of the remaining deposits of $110, 993.93 came from accounts that were held personally by the Debtors.

It is Rudisill's position that, since funds deposited to a 401(k) account may only be deferred compensation or employer match funds, all of the funds that came from the Debtors' personal bank and investment accounts instead of directly from the employer, were unlawfully deposited to the 401(k) accounts and cannot be claimed as exempt.

According to the Debtors, the funds that went into the 401(k) accounts were originally paid out to them as distributions from Gardener and Co., P.C. At the end of the tax year, they caused Gardner and Co., P.C., to recharacterize those distributions as wages and pay employment taxes on the additional wage expense in order to make sure that wages paid to the Debtors by the company were reasonably related to the services they provided. Debtors argue that, once the funds had been recharacterized as wages, they could be deposited to their 401(k) accounts as deferred compensation.

When it comes to taxation, the government levies taxes based on the economic realities of a transaction as opposed to form. *See, e.g., Helvering v. F. & R. Lazarus & Co.*, 308 U.S. 252, 255 (1939) ("In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding."). Where a company pays an employee/shareholder an amount of salary that is not consistent with a reasonable salary amount or the amount of the dividend paid, the Internal Revenue Service, in recognition of the those economic realities, will recharacterize a portion of the dividend as salary and assess the unpaid employment taxes and penalties against the company. *See, e.g., David E. Watson, P.C. v. United States*, 668 F.3d 1008 (8th Cir. 2012).

There is nothing unusual or suspect in Gardner and Co., P.C.'s year-end re-balancing of distributions versus salary for the purpose of insuring that its shareholders received reasonable compensation and that appropriate employment taxes were paid. An S corporation taxpayer that does not examine the reasonableness of salaries paid to shareholders in relation to dividends will regret not having done so when the Service does the recharacterization long after-the-fact and assesses the unpaid tax and penalties. Kristen Harrington, *Employment Taxes: What Can the Small Businessman Do?*, 10 Akron Tax J. 61, 67 (1993) ("The message from the Service, sounding loud and clear . . . is this: first pay 'reasonable compensation' to shareholder-

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

employees performing substantial services for the S corporation or else face potential recharacterization of whatever other payments have been made to the shareholder.").

In similar fashion, the Court looks to the economic realities revealed by the facts when that reality diverges from the labels that the parties use to describe a transaction. The reality here is the vast majority of the funds deposited to the Debtors' 401(k) accounts, from December of 2011 through February of 2012, did not come from their employer either as elective deferred compensation or as profit sharing.[1] The funds came directly from personal accounts held by the Debtors. The Court finds that those funds, deposited to the 401(k) accounts from the Debtors' personal funds, do not constitute lawful contributions to their 401(k) accounts and, consequently, are not funds that may be claimed as exempt from their chapter 7 bankruptcy estate.

The evidence shows that the Debtors transferred $110,993.93 into their newly established 401(k) accounts out of funds that were in the Debtors' possession and under their exclusive control at the time the transfers were made. It is immaterial where those funds originated. Whether the funds originated as proceeds of the sale of the Debtors' accounting business to Rudisill; whether they originated as salary paid by Gardner and Co., P.C.; or whether the funds originated as shareholder distributions – later recharacterized as salary – is beside the point. Those funds came neither as elective deferred compensation deposited by the employer or as employer profit sharing contributions. The fact that it may be common practice for an S corporation taxpayer to do a year-end examination of salary amounts compared to dividends paid out to shareholders to insure that reasonable salaries are paid for employment tax purposes simply has no bearing on how contributions to an employee's 401(k) account are made.

An employee covered by a 401(k) plan has the option to elect to have the employer pay a portion of her future compensation "to a trust under the plan on behalf of the employee, or to the employee directly in cash." 26 U.S.C. § 401(k)(2)(A). When a covered employee elects to defer receipt of a portion of her compensation and have the employer instead pay the compensation into a 401(k) account on her behalf, the employee has made an "elective deferral." 26 U.S.C. § 402(g)(3)(A). The Internal Revenue Code defines the term "elective deferrals" strictly in terms of an "employer contribution" – never in terms of funds contributed by the employee. 26 U.S.C. § 402(g)(3). The term "employer contribution" includes funds paid into an employee's 401(k) account pursuant to the employee's election as well as an employer's matching contribution and certain nonelective contributions. 26 U.S.C. § 401(k)(3)(D).

The Court finds no language in the Internal Revenue Code that suggests that funds paid into a 401(k) account directly out of funds in the employee's possession and under the employee's exclusive control can, in any way, qualify as an employer contribution that may

---

[1] Out of deposits totaling $113,593.93, a single deposit of $2,600.00 was made to Kenneth Gardner's 401(k) account from an account held by Gardner and Co., P.C.

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

lawfully be made to a 401(k) account. More telling, the Debtors are highly experienced accountants with years of experience advising businesses on 401(k) plans. The Debtors' post trial brief (docket #150) is devoid of any citation to authority for the proposition that an employer contribution to a 401(k) account may come from funds that are in the possession and under the exclusive control of the employee.

The Debtors recognize this problem. In an attempt to address it, they caused Gardner and Co., P.C., to create journal entries on its books showing that the funds contributed to the Debtors' 401(k) accounts were paid into it from the Debtors as shareholder capital contributions and then were paid out as employer contributions to the Debtors' 401(k) accounts.

First of all, it never happened. The journal entries are wholly fictitious and do not reflect the facts in evidence. There was never a time, after the Debtors received those funds, that they were ever back in the possession and under the control of Gardner and Co., P.C. Moreover, even if there had been an actual transfer of funds from the Debtors to Gardner and Co., P.C., the economic reality reflected by such a maneuver would be to use Gardner and Co., P.C., merely as a conduit to do what the law does not otherwise allow. The law does not allow individuals to make deposits of personal funds directly into their 401(k) accounts. Channeling personal funds briefly through a business entity for the purpose of placing those funds into a 401(k) account does not alter the economic reality of the transaction.

Elective deferrals of compensation may not be made to a 401(k) account in advance of the compensation actually being earned. 26 C.F.R. § 1.401(k)-1(a)(3)(iii)(C). Each of the Debtors' 401(k) account statements from LPL Financial for January 2012 reflect 2012 deferred compensation of $22,500.00. Those deposits totaling $22,500.00 were made to each of the Debtors' 401(k) accounts on January 5, 2012, and on January 9, 2012. Even if the deposits had come from Gardner and Co., P.C., there is no evidence that, during the first nine days of 2012, the Debtors had each earned as much as $22,500.00 in compensation that could be used as elective deferrals for 2012.

The preponderance of the evidence persuades the Court that neither of the Debtors had earned as much as $22,500.00 in compensation from Gardner and Co., P.C., during the initial nine days of 2012. Gardner and Co., P.C., did not receive revenues during that period that could support as much as $45,000.00 in compensation earned by the Debtors during the first nine days of the year. Gardner and Co., P.C., bank statements from High Country Bank were entered into evidence covering the period from December 2, 2011, through February 17, 2012. The total of deposits made to the Gardner and Co., P.C., business account during that period covering somewhat over two months is $11,993.99. That level of cash flow hardly supports a finding that the Debtors earned compensation of nearly four times that amount during the first nine days of 2012.

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

      Nor does the prior year Gardner and Co., P.C., tax return support that level of earnings. For the year, 2011, Gardner and Co., P.C., reported gross revenues of $167,860.00. That averages less than $14,000.00 in total monthly revenues. That level of cash flow is inconsistent with compensation earned by the company's shareholders of $45,000.00 for the first nine days of 2012.

      Even if the purported elective deferrals deposited to the Debtors' 401(k) accounts had actually come from Gardner and Co., P.C., the Court finds no evidence in the record to support a finding that the $45,000.00 deposited to the Debtors' accounts at the beginning of 2012 was earned during 2012 in advance of the dates that funds were deposited in accordance with 26 C.F.R. § 1.401(k)-1(a)(3)(iii)(C). At best, the $45,000.00 that the Debtors transferred into their 401(k) accounts, and that they purported to funnel through Gardner and Co., P.C., might be described as anticipated earnings. But the applicable regulations do not permit anticipated earnings to be treated as bona fide employer contributions of elective deferrals to a 401(k) account.

      Amounts elected to be contributed to a 401(k) account may not be "currently available" to the employee at the time the election is made. 26 C.F.R. § 1.401(k)-1(a)(3)(iii).

> Cash or another taxable benefit is currently available to the employee if it has been paid to the employee or if the employee is able currently to receive the cash or other taxable benefit at the employee's discretion. An amount is not currently available to an employee if there is a significant limitation or restriction on the employee's right to receive the amount currently. Similarly, an amount is not currently available as of a date if the employee may under no circumstances receive the amount before a particular time in the future.

26 C.F.R. § 1.401(k)-1(a)(3)(iv).

      The Debtors caused Gardner and Co., P.C., to create its employee profit sharing plan in December of 2011. They could have made no election as to future deferred compensation prior to the creation of the Gardner & Co., P.C., 401(k) Profit Sharing Plan. As the Court has found previously, the Debtors transferred $110,993.93 of their personal funds into their 401(k) accounts. Not only were those funds currently available to the Debtors in December of 2011, the funds were in the Debtors' possession and under their exclusive control.

      The Court finds, with the exception of $2,600.00 deposited to Kenneth Gardner's 401(k) account, the funds contained in Kenneth Gardner's 401(k) account # ****-6477 and in Kay Gardner's 401(k) account #****-2033, held at LPL Financial as of the petition date are not exempt under 11 U.S.C. § 522(b) and COLO. REV. STAT. § 13-54-102(1)(s). Those funds were not deposited to those accounts in accordance with applicable IRS statutes and regulations and

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

are, therefore, not funds held in a "pension or retirement plan or deferred compensation plan" as those terms are used in § 13-54-102(1)(s).

The Colorado exemption for "[p]roperty, including funds, held in or payable from any pension or retirement plan or deferred compensation plan," COLO. REV. STAT. § 13-54-102(1)(s), is not "limited to plans that possess attributes of ERISA-qualified or tax-qualified plans." *Dillabaugh v. Ellerton*, 259 P.3d 550, 554 (Colo. Ct. App. 2011).[2] In *Dillabaugh*, Colorado's Court of Appeals held that a plan that appeared to be a "top hat" deferred compensation plan that was neither ERISA-qualified nor entitled to special tax treatment was, nonetheless, entitled to be claimed as exempt under § 13-54-102(1)(s). The debtor was an executive at Sefton Resources, Inc. At the time the judgment creditor served its garnishment on Sefton, it acknowledged a future retirement obligation to the debtor of $839,832.00. The obligation was contractual in nature. It was unfunded and payable from the Sefton's general assets. *Dillabaugh*, 259 P.3d at 554 n.4. It appears that the record in *Dillabaugh* was limited but the Court characterized the plan as being a top hat type of plan that is maintained for a select group of top executives and allows the participant to defer a portion of his compensation until retirement. *Id*.

Top hat plans, also known as nonqualified deferred compensation ("NQDC") plans, like the one under review by the *Dillabaugh* court are highly regulated. *See, generally,* Joy Sabino Mullane, *The Unlearning Curve: Tax-based Congressional Regulation of Executive Compensation*, 60 Cath. L. Rev. 1045, 1060-65 (2011); *In re IT Group, Inc.*, 448 F.3d 661, 664-65 (3rd Cir. 2006) ("Certain deferred compensation plans, known as 'top hat' plans, are subject to ERISA's administrative and enforcement provisions, but exempt from the substantive provisions that regulate plan funding and impose fiduciary duties."). They are a common and well established type of deferred compensation plan for highly paid executives and they must comply with significant statutory regulation to avoid current taxation. Mullane, *supra*, at 1060-65.

The question for this Court is whether Colorado's exemption of retirement plans that need not be ERISA qualified or tax-qualified requires the Court to recognize the Debtors' 401(k) accounts as exempt. But the Court does not read *Dillabaugh* to approve the exemption of a purported 401(k) plan that meets none of the requirements of a 401(k) plan. The Court rejects the Debtors' claim of exemption not because their accounts are neither ERISA nor tax-qualified but because they are not the "deferred compensation" accounts that the Debtors claim them to be. The Debtors' recharacterization of dividends to wages for the purpose of insuring that they have paid an appropriate amount of employment taxes is all well and good but it does not change

---

[2] *Dillabaugh* disagrees with this Court's holding in *In re Ludwig*, 345 B.R. 310 (Bankr. D. Colo. 2006). In *Ludwig*, the Court held that an annuity that was neither ERISA-qualified nor entitled to special tax treatment did not satisfy the requirement for exemption under COLO. REV. STAT. § 13-54-102(l)(s).

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

the indisputable fact that the funds deposited to the accounts simply are not deferred compensation. They came from the Debtors' own resources and were transferred directly from accounts that were exclusively under the Debtors' control. What the Debtors in this case did is no different from simply setting funds aside with the subjective intent that they will be used to fund future retirement expenses. The Court cannot read *Dillabaugh* so broadly. This is not a matter of some small technical failure to comply with all of the Tax Code's requirements. The Debtors claim to have deferred compensation accounts. They deferred nothing. The Debtors' accounts are 401(k) deferred compensation accounts in name only. They are a sham and they are not embraced by *Dillabaugh*'s broad reading of COLO. REV. STAT. § 13-54-102(1)(s).

It is arguable that the purchase of a retirement annuity, even though not covered by ERISA and not qualified for favorable tax treatment, would pass muster under *Dillabaugh*'s reading of COLO. REV. STAT. § 13-54-102(1)(s). But, even if the Debtors has shifted assets into a legitimately exempt form, the evidence of their fraudulent intent would require disallowance of the exemption.

*2) Fraudulent Intent*

The Court finds that the above described transfers of funds from accounts that were held in the exclusive possession and control of the Debtors and into the Debtors' 401(k) accounts were done with fraudulent intent. As a consequence, under Colorado law, they are not entitled to claim their 401(k) accounts as property that is exempt from their bankruptcy estates.

The Tenth Circuit discussed the issue of converting non-exempt assets to exempt assets in *OTE Dev. USA, Inc. v. Warren (In re Warren)*, 512 F.3d 1241 (10th Cir. 2008). The discussion is instructive. The case involves a complaint to deny discharge under 11 U.S.C. § 727. It does not involve an objection to claimed exemptions. However, in that case, in looking at the debtors' "frenzy to convert all of their assets to exempt assets in the month before filing for bankruptcy," *Id*. at 1250, the court found specific indicia of fraudulent intent that supported the lower courts' denial of the debtors' discharges under § 727.

The court was careful not to suggest that the mere conversion of non-exempt assets into exempt assets on the eve of bankruptcy is sufficient to trigger a finding of fraudulent intent. Indeed, the court quoted with approval Judge Arnold's dissent in *Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871 (8th Cir. 1988), where he said "[a] debtor's right to make full use of statutory exemptions is fundamental to bankruptcy law." *Warren*, 512 F.3d at 1249 (quoting *Tveten*, 848 F.2d at 877). It also noted Judge Arnold's concurring remarks in the companion case of *Hanson v. First Nat'l Bank*, 848 F.2d 866 (8th Cir. 1988): "[the debtor's] avowed purpose to place the assets in question out of the reach of his creditors [by using statutory exemptions is] a purpose that, as a matter of law, cannot amount to fraudulent intent." *Warren*, 512 F.3d at 1249 (quoting *Hanson*, 848 F.2d at 870). "But Judge Arnold's view has not universally prevailed." *Id*. "This circuit has not joined Judge Arnold's camp." *Id*.

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

In *Warren*, the Court affirmed the lower courts' denial of the Debtors' discharges because, after assessing the lower courts' factual finding based on an analysis of badges of fraud, the court agreed that extrinsic evidence of fraudulent intent existed to justify denial of discharge under 11 U.S.C. § 727(a)(2).

That analysis is equally applicable to the narrower issue of an objection to a claim of exemption. *See, e.g., Hanson v. First Nat. Bank*, 848 F.2d 866 (8th Cir. 1988) (In the context of an objection to a claim of exemption, the court analyzed whether debtors' conversion of non-exempt assets to exempt assets on the eve of bankruptcy showed extrinsic evidence of fraud.).

The cases are plentiful that analyze a debtor's pre-petition activity converting non-exempt assets to exempt assets. The cases arise both in the context of a denial of discharge under 11 U.S.C. § 727(a)(2) and objections to exemptions claimed under 11 U.S.C. § 522(b). Because these are cases alleging a debtor's fraud, they each rest on their unique facts. The difference between the denial of discharge cases and the objections to exemption claims is that federal law controls the finding of fraud under § 727(a)(2). Under § 522(b), where a debtor claims exemptions allowable under state law, that claim of exemption is controlled by state law. Where the debtor's fraud would defeat a claim of exemption under state law, it defeats the exemption claim under § 522(b). *See, e.g., In re Reed*, 700 F.2d 986, 991 (5th Cir. 1983) ("While the Code requires that, when the debtor claims a state-created exemption, the scope of the claim is determined by state law, it sets separate standards for determining whether the debtor shall be denied a discharge. The debtor's entitlement to a discharge must, therefore, be determined by federal, not state, law.")

In the case of *Yates v. Gransbury*, 12 P. 206 (Colo. 1886), the judgment debtor was entitled to claim one wagon as exempt from execution. He owned two. The debtor claimed the one seized by the sheriff as exempt but tried to conceal the other. The sheriff disregarded the debtor's claim of exemption and sold the wagon in satisfaction of the judgment creditor's claim. The trial court awarded damages to the judgment debtor on account of wrongful seizure of exempt property. The Colorado Supreme Court reversed. It said

> The statute was beneficently intended to protect the judgment debtor in the use and enjoyment of certain specified property, not be protect him in a fraud against the judgment creditor. The plaintiff had a right to select and retain one of the wagons as exempt, but he had no right, either directly or indirectly, to select and retain both. Having concealed one, his selection and demand of the other was fraudulent, and the refusal of the officer to regard it affords no ground for recovery under the statute.

*Id*. at 206. To the same effect, in the case of *Penrose v. Stevens*, 65 P.2d 697 (Colo. 1937), the Colorado Supreme Court said: "Exemptions provided by statute for the purposes intended are, as they should be, favored. A perversion of the statute to admit of fraudulent purposes should be

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

avoided by the courts." *Id*. at 699. In *Penrose* the court found no fraud in the judgment debtor's claim that his truck was a tool of his trade and the court allowed the exemption. *Id*.

The Court has, however, located Colorado cases, involving the homestead exemption that appear to stand for a contrary rule. In the case of *Brooks v. Black*, 123 P. 131 (Colo. Ct. App. 1912), Mr. Black, the debtor, transferred the family home, titled in his name only, to his wife by quitclaim deed. She, in turn, conveyed the property by warranty deed to the Newton Lumber and Mercantile Company, a corporation ("Newton"). Newton then executed a bond for deed whereby it agreed to reconvey the property to Mrs. Black upon her payment of a sum of money. Mrs. Black then recorded the bond and made a homestead designation – in accordance with then-current law – in the margin of the recorded bond. The judgment creditor complained that the conveyance from husband to wife was made in fraud of his creditors. The court said: "[t]hat the deed from husband to wife, upon the record of which she makes a homestead entry, was, as to creditors, fraudulent and void is no defense to, and will not avoid the validity or efficiency of, such homestead entry as an exemption, is forever settled in this state." *Id*. at 133 (citing *McPhee v. O'Rourke*, 15 P. 420 (Colo. 1887); *Tibbetts v. Terrill*, 96 P. 978 (Colo. 1908)).

In *McPhee*, the judgment creditor complained that Mr. O'Rourke had conveyed the family real estate to his wife in fraud of creditors and that her designation of the property as a homestead must be disregarded on account of that fraud. The court said: " it has been held that when a conveyance to the wife is made or caused to be made by the husband, for the purpose of placing the home beyond the reach of his creditors, the wife is not precluded thereby from claiming the benefit of the homestead statute, even as against such creditors." *McPhee*, 15 P. at 423-24.

In *Tibbetts*, Mr. Terrill transferred his ranch to Gray, a third party, in return for Gray's note. In turn, Gray convey the property to Mrs. Terrill, the debtor's wife, whereupon the debtor cancelled Gray's note. Mrs. Terrill gave no consideration for the transfer. The court found that the transfer to Mrs. Terrill, through Gray, was fraudulent and void as to Terrill's creditors, but

> As to the homestead entry of Mrs. Terrill, it is contended by appellant that it can be of no avail to Mrs. Terrill or her grantee Alley, for the reason that the title of Mrs. Terrill, having been taken in fraud of Terrill's creditors, was void as to them, and was not the subject of a homestead exemption. That does not seem to be the rule in this state. . . . [T]he entry of the homestead by Mrs. Terrill created a valid exemption in her favor, even against the creditors of Terrill who had been defrauded by the transfer . . . .

*Id*. at 981.

Because the Court has located no Colorado cases stating a different rule, it assumes that *McPhee*, *Tibbetts*, and *Black* are all good law. It appears that a Colorado court would recognize

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

a homestead exemption that is properly claimed as to real estate even though the transfer of the property into the hands of the individual claiming the exemption was fraudulent as to the creditors of the transferor.

By the same token, the Court has located no authority to cause it to question the viability of the result in *Yates v. Gransbury* where the court found the sheriff was justified in disregarding a claimed exemption in personal property that was tainted by fraud. And, even though the court's statement in *Penrose v. Stevens* that "[a] perversion of the [exemption] statute to admit of fraudulent purposes should be avoided by the courts, " 65 P.2d at 699, was dicta as regards the result reached in that case, the Court does not believe the Colorado Supreme Court makes such pronouncements lightly.

The cases are easily harmonized. In *McPhee* the court said

> The duty and relation to the state in such case are of higher import than the duty and relation to such creditor. In the first section of his work on Homesteads and Exemptions, Mr. Thompson reproduces some expressions from eminent sources upon this view, as follows: "The late Senator Benton, advocating in the United States senate the adoption of a general homestead policy, said: 'Tenantry is unfavorable to freedom. It lays the foundation for separate orders in society, annihilates the love of country, and weakens the spirit of independence. The tenant has, in fact, no country, no hearth, no domestic altar, no household god. The freeholder, on the contrary, is the natural supporter of free government, and it should be the policy of republics to multiply their freeholders, as it is the policy of monarchies to multiply their tenants.'" There is, "said TARBELL, J., in a case in Mississippi, 'unquestionably, no greater incentive to virtue, industry, and love of country than a permanent "home," around which gather the affections of the family, and to which the members fondly turn, however widely they may become dispersed.'" The law, "said the supreme court of Iowa, in an early case, 'is based upon the idea that, as a matter of public policy, for the promotion of the prosperity of the state, and to render independent and above want each citizen of the government, it is proper he should have a home, – a homestead, – where his family may be sheltered, and live beyond the reach of financial misfortune, and the demands of creditors who have given credit under such law. And this policy is characterized as 'liberal' and 'benevolent.'"

15 P. at 423. Colorado courts recognize a degree of importance in the homestead exemption that sets it apart from other claims of exemption. At least in the narrow circumstance of a husband conveying real estate to his wife in fraud of his creditors, it appears that Colorado courts would, nonetheless, allow the wife's claim of a homestead exemption to attach to the fraudulently conveyed property. In those cases, it is the transferee that is allowed the exemption, not the debtor who transferred the property. Nor is the debtor's fraud without consequence. In *Tibbetts*,

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

even though the court allowed the homestead exemption, because the property was worth more than the exemption, the property was sold and the excess applied in partial satisfaction of the judgment. *Tibbetts*, 96 P. at 981-82.

There is nothing in those homestead cases that undermines the rule enunciated in *Yates v. Gransbury* that Colorado law will not recognize a claim of exemption in personal property that is tainted by the debtor's fraud. The Court has located no Colorado cases that extend the same extraordinary degree of deference to exemptions other than the homestead exemption. Colorado courts would not countenance a fraudulent claim of exemption under COLO. REV. STAT. § 13-54-102(1)(s).

There is ample evidence here of the Debtors' intent to fraudulently claim their non-exempt personal funds as exempt under § 13-54-102(1)(s) through the use of sham 401(k) accounts.

### a) *Proximity to the Judgment and the Bankruptcy Filing*

All of the deposits to the Debtors' 401(k) accounts, which purport to be deferred compensation and profit sharing for the years of 2011 and 2012 were made within a period of 51 days. On November 23, 2011, the arbitrator's interim decision was entered. The following month, December of 2011, is when the Debtors caused Gardner and Co., P.C., to create its Gardner & Co, P.C., 401(k) Profit Sharing Plan and on December 15, 2011, the Debtors began emptying out their non-exempt accounts by making transfers to the new 401(k) accounts. The final purported employer match deposits were made on February 3, 2012. The final judgment was entered on February 13, 2012, and the bankruptcy petition was filed two days later. The timing of these events evidences a scramble by the Debtors to place as many assets as possible into their 401(k) accounts.

### b) *Transfers into the 401(k) Accounts Drained the Debtors' Non-Exempt Accounts*

Debtors held two non-exempt accounts at LPL Financial. The Debtors also held a Charles Schwab account. As of November 30, 2011, prior to the establishment of the Gardner & Co., P.C., 401(k) Profit Sharing Plan, those accounts totaled $132,215.04.[3] Of that total, the evidence reflects that $110,993.93 was transferred into the new 401(k) accounts. By February

---

[3] As of November 30, 2011: the balance of the Gardner Joint Account (LPL) was $93,702.75; the balance of Ken's Cash Account (LPL) was $20,755.09; the balance of the Charles Schwab account was $17,757.20.

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

29, 2012, the total balance of those same LPL Financial and Charles Schwab accounts was $407.52.[4]

        c)     *The Transfers Made to the 401(k) Accounts Do Not Comply with I.R.S. Regulations*

The principal attributes that distinguish a deferred compensation plan under 26 U.S.C. § 401(k) from an individual's personal funds are (a) that the funds deposited to such an account represent deferred compensation that was never paid to the employee and (b) the deposit to the 401(k) account is made by the employer on the employee's behalf. The Debtors ignored both requirements. The vast majority of funds deposited to the Debtors' 401(k) accounts were transferred into the accounts from the Debtors' personal assets. The funds in the accounts represent neither deferred compensation or profit sharing. With the exception of one $2,600.00 deposit, no funds were deposited into the accounts by Gardner and Co., P.C.

        d)     *The Debtors Attempted to Obfuscate the Source of Funds*

The Debtors attempted to paper over the fact that funds had been directly transferred from their personal accounts. They caused accounting entries to be made in the Gardner and Co., P.C. books reflecting that they had made capital contributions to Gardner and Co., P.C., and that Gardner and Co., P.C., had made the deposits to the 401(k) accounts. The accounting entries were wholly fictitious and purported to document events that never occurred. They serve as additional evidence of the Debtors' fraudulent intent.

        e)     *The Debtors Are Financially Sophisticated*

Both Debtors are professional accountants. The evidence is that they advise small businesses as to tax matters and with respect to retirement accounts. They are professional experts and they advise others with respect to the very regulations which they violated in making the transfers of their personal funds into the new 401(k) accounts. Moreover, the regulations that the Debtors violated are not minor or peripheral. They go to the very essence of what a 401(k) deferred compensation account is. As professionals in the field, the Court concludes their failures were intentional and willful, not inadvertent mistakes.

---

[4] As of February 29, 2012: the balance of the Gardner Joint Account (LPL) was $0.00; the balance of Ken's Cash Account (LPL) was $184.15; the balance of the Charles Schwab account was $223.37.

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

### III. CONCLUSION

The Gardners claim exemptions in accounts held by their current business partnership and they claimed the equipment used in the operation of their business as exempt property. The evidence persuades the Court that neither the accounts nor the equipment were the personal property of the Debtors as of the petition date. Because those items were not the Debtors' property on the petition date, they are not bankruptcy estate property. As a consequence the Court will deny those claims of exemption because the exemptions are inapplicable to non-estate property.

The Court will deny the claimed exemption for the Debtors' health savings account ("HSA"). The Debtors claimed that exemption under the provision for exemption of retirement and deferred compensation plans. An HSA simply does not fit into any category of account listed in that section and the Court cannot identify any other applicable exemption that covers an HSA.

The Debtors have substantial assets in retirement type accounts as to which no question has been raised. However, during a short period of time between the entry of the interim arbitration award and the Debtors' bankruptcy filing, the Court has found that they transferred $110,993.93 of their personal funds into accounts designated as 401(k) accounts. Their claim of exemption as to those funds will be denied both because the funds transferred into those accounts are not the deferred compensation and profit sharing that they purport to be and because those transfers were made by the Debtors with a fraudulent intent.

Therefore, it is

**ORDERED** that John Rudisill and Rudisill, Gardner and Zeman, P.C.'s *Objection to Debtors' Amended Claims of Exemption* (docket #63) is SUSTAINED IN PART and DENIED IN PART as follows:

a) Debtors' claim of exemption in the "Optum Health Bank Account - Health Savings Account" is DENIED.

b) Debtors' claim of exemption in "Retirement Accounts - LPL Financial" is DENIED as to the amount of $53,564.50 in LPL Financial Account No. ****-6477 and is DENIED as to the amount of $57,429.43 in LPL Financial Account No. ****-2033. The Debtors' claim of exemption is ALLOWED as to all other retirement accounts held at LPL Financial.

c) Debtors' claim of exemption in "Gardner & Co. General Partnership Account" is DENIED as inapplicable to property that is not property of the bankruptcy estate.

ORDER ON OBJECTION TO CLAIMS OF EXEMPTION
Case No. 12-12485 HRT

    d) Debtors' claim of exemption in "Professional practice equipment" is DENIED as inapplicable to property that is not property of the bankruptcy estate.

Dated this ___19th___ day of July, 2013.

                                            **BY THE COURT:**

                                        *Howard Tallman*

                                        Howard R. Tallman, Chief Judge
                                        United States Bankruptcy Court